UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL GEARY WILSON,

        Plaintiff,

    v.

FLORIDA DEPARTMENT OF REVENUE, et al.,

        Defendants.

Case No.  14-cv-04726-JCS

**SECTION 1915 REVIEW AND ORDER DENYING MOTION TO EXPEDITE**

## I.    INTRODUCTION

Plaintiff  Michael Geary Wilson  brings this pro se action against the Florida Department of Revenue ("FDOR"), the California Health and Human Services Agency ("CHHS"), the County of Contra Costa ("Contra Costa"), four Contra Costa employees in their official and individual capacities, and John Does 1-45.  On November 10, 2014 he filed a First Amended Complaint, which is now the operative complaint in the action.  Having previously granted Plaintiff's Application to Proceed in Forma Pauperis, the Court now considers whether Plaintiff's Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of an in forma pauperis complaint that is (1) frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  See *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).   Plaintiff has consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).   For the reasons stated below, the Court dismisses Plaintiff's complaint in part with leave to amend.[1]  The Case Management Conference set for **January 23, 2015 at 2:00 p.m.** is vacated.

---

[1] Plaintiff also brings an emergency motion to expedite review under § 1915.  Docket No. 15. That motion is DENIED on the basis that it is moot.

United States District Court
Northern District of California

## II.     THE AMENDED COMPLAINT

In the First Amended Complaint ("FAC"), Plaintiff asserts claims relating to efforts to collect child support payments from him by FDOR and CHHS after his parental rights were allegedly terminated by a Florida Court on June 13, 2011.  He also asserts claims based on allegations that he was prevented from entering the office of Contra Costa's Department of Child Support Services ("DCSS") on August 19, 2014 and has been excluded from that office since that date.  Plaintiff's factual allegations are as follows.

Plaintiff alleges that on June 13, 2011, a Florida court ("the Florida Court") entered a Termination of Parental Rights order  ("Florida Order") against Plaintiff as to his only child, "G.C.W.," who is a minor.  FAC ¶ 8.  The Florida Order is attached to the FAC as an exhibit and reflects that a Florida Superior Court modified its previous parenting plan to give Plaintiff's former wife "sole parental responsibility for the parties' minor child" and to prohibit time-sharing of any kind by Plaintiff with the minor child "until further order of the Court."  *Id*., Appendix A. Plaintiff further alleges that on October 24, 2011, a California court ("the California Court") issued an order ("California Order") confirming the enforceability of the Florida Order.  *Id*. ¶ 19. That order also is attached to the FAC and reflects that on October 24, 2011, the Superior Court for the County of Alameda issued a Minute Order denying Plaintiff's petition to enforce an out-of-state custody determination.  *Id*., Appendix A.  The court stated that Plaintiff had provided a July 13, 2009 hearing disposition form rather than an actual custody order, and that a 2009 custody order had been modified by the Florida Order discussed above.  *Id*.

Plaintiff contends his obligation to provide child support ended when the Florida Court modified the custody order for his minor child giving all parental responsibilities to his former wife.  *Id*., ¶ 20.  He further alleges that "[s]ince about April 2012, Defendant FDOR, by and through its unidentified employees and agents, has stolen thousands and thousands of dollars from PLAINTIFF, committed mail and/or wire fraud against him, defamed him and intentionally interfered in his business relationships under the pretext of collecting child support payments, which were not and are not due from PLAINTIFF."  *Id*. ¶ 21.  In particular, he alleges that Defendants FDOR through "unidentified employees and agents" interfered with his contractual

2

1    relationship with his former employer, Kaiser Foundation Health Plan, Inc. ("Kaiser") by

2    attempting to collect child support payments.  *Id*. ¶¶ 21-24.  He further alleges that FDOR,

3    CHHS, and Contra Costa, through their employees and agents, including Defendants Dippel,

4    Linnel and Self, interfered with his contractual relationship with Bank of America by causing an

5    "Order to Withhold" to be placed on two bank accounts held by Plaintiff with Bank of America.

6    *Id*. ¶ 28.

7        Plaintiff alleges that "[o]n or about July 21, 2014, in a face-to-face conversation that was

8    on the record, Defendant LINNELL expressed her and Defendant SELF'S mutual understanding

9    to PLAINTIFF that none of his parental rights regarding G.C.W. survived after June 13, 2011

10   when the Florida TPR order was entered."  *Id*. ¶ 26.  He further alleges that "[o]n or about August

11   7, 2014, Defendant LINNELL reconfirmed in writing the aforementioned understanding regarding

12   the Florida TPR order." *Id*. ¶ 29.  Plaintiff also alleges that "certain employees of Defendant

13   FDOR" knew about Plaintiff's relationship with Kaiser, *id*. ¶ 23, and that certain employees of

14   CHHS and Contra Costa, including Defendants Dippel, Linnel and Self, knew or should have

15   known of Plaintiff's contractual relationship with Bank of America.  *Id*. ¶ 27.

16       Plaintiff alleges that "[o]n or about August 19, 2014, PLAINTIFF attempted to lawfully

17   exercise his constitutionally protected rights to access 50 Douglas Drive, Suite 100, in Martinez,

18   California, which is a public area of a public building, during regular business hours, in order to

19   observe, gather information about, scrutinize and criticize certain governmental activities

20   occurring there, and petition Defendant CONTRA COSTA'S DCSS for redress of grievances. In

21   retaliation for and as a prior restraint of engaging in those protected activities, Defendant

22   CARDENAS blocked PLAINTIFF'S access to that public area of that public building. According

23   to other DCSS employees' responses to PLAINTIFF'S repeated inquiries thereafter, Defendant

24   DIPPEL ratified the foregoing actions by Defendant CARDENAS. As a direct result, the

25   Defendants have kept PLAINTIFF from accessing Defendant CONTRA COSTA'S DCSS office

26   for any of the foregoing lawful purposes ever since on or about August 19, 2014." *Id*. ¶ 31.

27       Plaintiff alleges that CHHS and Contra Costa, by and through its employees, including

28   Defendants Dippel, Linnel and Self, have refused his "multiple demands, the most recent of which

United States District Court
Northern District of California

1   occurred on November 3, 2014, to immediately correct his balance, stop their collection efforts

2   against him, release their unlawful withholding of his money and remove him from their child

3   support case(s) regarding G.C.W." *Id.* ¶33.

4       Plaintiff alleges that on November 4, 2014, G.C.W.s "alienating mother" "caused a

5   message to be sent from the email address for G.C.W. that PLAINTIFF created in early 2009." *Id.*

6   ¶ 34.  The message, in redacted form, is attached to the FAC as Appendix B.  The message is

7   addressed to "daddy" and states, *inter alia*, "I love you so much and hope to see you VERY

8   VERY VERY  VERY VERY VERY VERY soon!!!!!!!!!!!!!!!!!!!!!!" *Id.*, Appendix B.  Plaintiff

9   alleges that G.C.W.'s mother "was either impersonating or using G.C.W. in a blatant attempt to

10  manufacture a further fraudulent basis for the Defendants' wrongdoing that has benefitted her at

11  G.C.W.'S and PLAINTIFF'S expense." *Id.* ¶ 34.

12      Plaintiff alleges that Defendants' actions have caused him to "experience symptoms

13  associated with his disabilities," *id.* ¶ 38, and that Defendants were aware of his disabilities.  *Id.* ¶¶

14  39-41.  According to Plaintiff,

15          He was shocked that the Defendants abused him as they did. As a
            direct result of the Defendants' misconduct on or about July 21,
16          2014 and thereafter, PLAINTIFF has suffered emotional distress; he
            has been preoccupied with the denial of his rights. He has been upset
17          and had trouble sleeping. His health has deteriorated. PLAINTIFF
            knew he had not violated the law, but he worried that some false
18          charge and/or a conviction on his record would prevent him from
            vindicating his rights and resuming his career as a leader in his field.
19

20  *Id.* ¶ 32.

21      Plaintiff alleges that "[o]n information and belief, employees and/or associates of

22  Defendants CHHS and CONTRA COSTA, including Defendants DIPPEL, LINNELL, SELF,

23  knew of PLAINTIFF'S disabilities before July 21, 2014." *Id.* ¶ 42.   He further alleges that

24  "Defendants conspired to chill, frustrate, deny and/or retaliate against PLAINTIFF'S

25  exercise of his rights to protect himself from fraud, extortion, speak and gather information about

26  governmental activities free from prior restraint and viewpoint and/or other discrimination,

27  petition the government for redress of grievances, due process and equal protection under law."

28  *Id.* ¶ 43.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1      Plaintiff further alleges that the "*Monell* Defendants had policies and/or customs of

2  indifference to misconduct by their employees by failing to properly investigate complaints of

3  misconduct and to discipline them."  *Id*. ¶ 47.  According to Plaintiff, the "*Monell* Defendants also

4  had policies and/or customs of tolerating a 'code of silence'" and had customs of "making it

5  difficult for citizens to file complaints about the conduct of its employees,[]" "breaching the

6  confidentiality of citizens' confidential complaints[,]" "enabling retaliation against and

7  intimidation of citizens who file complaints[,]" and "performing negligent and/or sham

8  investigations of citizens' complaints."  *Id*. ¶¶ 48-49.

9      Plaintiff asserts the following claims in his FAC:

10      <u>Claim One</u>:  Violations of 42 U.S.C. § 1983, against all Individual Defendants based on

11  alleged violation of Plaintiffs "rights to freedom of speech (e.g., protections against viewpoint

12  discrimination, protection of gathering and recording information about government activities,

13  etc.) and to petition the government for redress of grievances under the First Amendment to the

14  United States Constitution, to freedom from threatened arrest, seizure and search without probable

15  cause under the Fourth Amendment to the United States Constitution, to freedom from deprivation

16  of liberty and property without due process of law, including such deprivation by means of

17  threatened false arrest, under the Fifth Amendment to the United States Constitution as

18  applied under the Fourteenth Amendment, and his fundamental liberty interest in the care,

19  custody, and management of his child, which is protected by the Fourteenth Amendment."  *Id*. ¶

20  60.  Plaintiff also alleges as part of this claim that: Defendants "perpetrated crimes against

21  PLAINTIFF under 18 U.S.C. § 241: CONSPIRACY AGAINST RIGHTS; 18 U.S.C. §

22  242: DEPRIVATION OF RIGHTS UNDER COLOR OF LAW; 18 U.S.C. § 371:  ONSPIRACY;

23  18 U.S.C. § 1503(A): OBSTRUCTION OF JUSTICE; 18 U.S.C. § 1512: TAMPERING WITH A

24  WITNESS, VICTIM, OR AN INFORMANT; 18 U.S.C. § 1513: RETALIATING AGAINST A

25  WITNESS OR VICTIM; and 18 U.S.C. § 2(A): AIDING AND ABETTING. They also committed

26  civil wrongdoing against PLAINTIFF under 42 U.S.C. § 12132: DISCRIMINATION and other

27  provisions of the Americans with Disabilities Act (ADA) as amended."  *Id*.

28      <u>Claim Two</u>:  Violations of Bane Act, Cal. Civ. Code § 52.1, against all Individual

Defendants, based on allegation that Defendants "interfere[ed] with and/or attempt[ed] to interfere with PLAINTIFF'S exercise and enjoyment of his rights as secured by the United States Constitution, California Constitution and common law and statutory rights, including protection from discrimination on the basis of his disabilities or economic status and protection from the following state crimes: CPC § 518, EXTORTION; CPC § 136.1(b)(1); CPC §§ 136.1(c)(1),136.1(c)(2)AND/OR 137(b) or (c): INFLUENCING, INTIMIDATING OR THREATENING A WITNESS, VICTIM, OR AN INFORMANT; CPC § 182(a)(1), (2) & (5): CONSPIRACY." *Id.* ¶ 64.

Claim Three: Violations of Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52, against all Individual Defendants, based on allegation that "the Individual Defendants "interfere[ed] with and or attempt[ed] to interfere with PLAINTIFF'S exercise and enjoyment of his rights as secured by the United States Constitution, California Constitution and common law and statutory rights, including protection from discrimination on the basis of his disabilities or economic status and protection from the following state crimes: CPC § 518, EXTORTION; CPC § 136.1(b)(1); CPC §§ 136.1(c)(1),136.1(c)(2)AND/OR 137(b) or (c): INFLUENCING, INTIMIDATING OR THREATENING A WITNESS, VICTIM, OR AN INFORMANT; CPC § 182(a)(1), (2) & (5): CONSPIRACY." *Id.* ¶ 68.

Claim Four:   Intentional Infliction of Emotional Distress, against all Individual Defendants, based on allegation that Defendants engaged in outrageous acts or omissions intentionally or in reckless disregard of the probability of causing Plaintiff emotional distress. *Id.* ¶¶ 70-74.

Claim Five: Intentional Interference with Contractual Relations – Kaiser, against all Individual Defendants Employed By Defendant FDOR.[2]

Claim Six: Intentional Interference with Contractual Relations – Bank of America, against all Individual Defendants Employed By Defendants CHHS and CONTRA COSTA.

---

[2] Plaintiff does not name any individual defendants employed by FDOR.  However, he seeks to sue unidentified "DOE" defendants who were "responsible for the occurrences or injuries alleged in [the FAC], acted as an agent or employee of the other defendants and ratified the conduct of other defendants."  FAC ¶ 9.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    <u>Claim Seven</u>: Fraud, against all individual Defendants Individual Defendants based on

2  allegations that they and their agents "have knowingly misrepresented, omitted, and/or concealed

3  material facts in their reports, investigations and representations before and/or on behalf of

4  California courts, and in their communications to PLAINTIFF."  *Id*., ¶ 85.  According to Plaintiff,

5  "[t]hese false representations are detailed throughout this Complaint and include falsified reports,

6  the true authorship of them, the denial of any improper contact with each other, the supposed

7  independence and neutrality of Defendants and their reports, investigations and representations,

8  and the fraudulent endorsements of those reports, investigations and representations."  *Id*.

9  Plaintiff further alleges that Defendants "made these misrepresentations and/or omissions in their

10  reports, sham investigations and representations to California courts with the intent of obtaining

11  favorable rulings and/or actions from them, enabling the *Monell* Defendants employees to harass,

12  intimidate and otherwise harm PLAINTIFF and his interests, and to propagate false and

13  defamatory information about PLAINTIFF to court staff, other employees of the *Monell*

14  Defendants, private individuals and corporations in contractual relationships with PLAINTIFF and

15  members of the public."  *Id*. ¶ 87.

16    <u>Claim Eight</u>: Defamation, against all Individual Defendants.

17    <u>Claim Nine</u>: Negligence, against all Individual Defendants

18    <u>Claim Ten</u>: Trespass to Chattels, against all Defendants, based on allegations that they

19  have interfered with Plaintiff's use of his property and harmed his good reputation, which is one of

20  his most valuable assets.

21    <u>Claim Eleven</u>: Civil conspiracy, against all Defendants.

22    <u>Claim Twelve</u>: *Monell* Violations of 42 U.S.C. § 1983, against Defendants FDOR, CHHS

23  and CONTRA COSTA ("the *Monell* Defendants"), based on the alleged violations of Plaintiff's

24  "constitutional and other federal rights as well as the federal crimes perpetrated against him by the

25  Individual Defendants were caused by the policies and customs of the *Monell*  Defendants.

26    <u>Claim Thirteen</u>: Request for Declaratory Judgment under 28 U.S.C. § 2201(a) that Plaintiff

27  does not have a child support obligation toward G.C.W., against all Defendants.

28    <u>Claim Fourteen</u>: Request for Injunction and Declaratory Judgment Pursuant to California

1   Code of Civil Procedure § 526a, against Defendants CHHS and/or CONTRA COSTA and their

2   employees enjoining the unlawful and/or unconstitutional acts alleged in the FAC.

3          In his prayer, Plaintiff seeks damages, attorneys' fees and costs and injunctive and

4   declaratory relief.  FAC at 21-22.

5   **III.    ANALYSIS**

6          **A.    Legal Standard**

7          If a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is permitted to

8   proceed in forma pauperis, the court must undergo a preliminary screening of the complaint and

9   dismiss any claims which: (1) are frivolous and malicious; (2) fail to state a claim upon which

10  relief may be granted; or (3) seek monetary relief from a defendant who is immune from such

11  relief.  28 U.S.C. § 1915(e)(2)(B).  To state a claim for relief, Plaintiff must make "a short and

12  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

13  When reviewing the sufficiency of the Complaint, the Court takes "all allegations of material fact

14  as true and construe(s) them in the light most favorable to the non-moving party." *Parks Sch. of*

15  *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990). The "tenet that a court must accept a

16  complaint's allegations as true," however, "is inapplicable to . . . mere conclusory statements."

17  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545

18  (2007)). The complaint need not contain "detailed factual allegations," but must allege facts

19  sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing

20  *Twombly*, 550 U.S. at 547).   In evaluating the sufficiency of the complaint, the court generally

21  looks only to the face of the complaint and the documents attached thereto.  *Hal Roach Studios,*

22  *Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990).  Complaints filed by

23  *pro se* litigants must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

24         **B.    Claims One and Twelve (42 U.S.C. § 1983, *Monell*)**

25         Section 1983 creates a cause of action against a "person who, under color of any [state

26  law], subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges,

27  or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "Section 1983 does not

28  create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by

United States District Court
Northern District of California

8

1    governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  A plaintiff

2    bringing a claim under § 1983 must show that "(1) the action occurred 'under color of state law'

3    and (2) the action resulted in the deprivation of a constitutional right or federal statutory right."

4    *Id*. (citation omitted).  "In order for a person acting under color of state law to be liable under

5    section 1983 there must be a showing of personal participation in the alleged rights deprivation:

6    there is no respondeat superior liability under section 1983."  *Id*.

7         Although municipalities are not subject to vicarious liability under § 1983 solely on

8    account of the actions of their employees, § 1983 "imposes liability on a government that, under

9    the color of some official policy, 'causes' an employee to violate another's constitutional rights."

10   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).   One way to establish a claim under

11   *Monell*  is to prove that an officer "committed the alleged constitutional violation pursuant to a

12   formal governmental policy or a longstanding practice or custom which constitutes the standard

13   operating procedure of the local governmental entity."  *Gillette v. Delmore*, 979 F.2d 1342, 1346

14   (9th Cir. 1992) (citations and quotations omitted).  In the alternative, *Monell* liability may be

15   established where the "individual who committed the constitutional tort was an official with final

16   policy-making authority'" or "an official with final policy-making authority ratified a

17   subordinate's unconstitutional decision or action and the basis for it." *Id*. at 1346-1347 (citations

18   omitted).

19        Plaintiff seeks to assert his § 1983 claim on the base of alleged violations of:  1) his "rights

20   to freedom of speech (e.g., protections against viewpoint discrimination, protection of gathering

21   and recording information about government activities, etc.) and to petition the government for

22   redress of grievances under the First Amendment to the United States Constitution;" 2) his right to

23   "freedom from threatened arrest, seizure and search without probable cause under the Fourth

24   Amendment to the United States Constitution;" 3) "freedom from deprivation of liberty and

25   property without due process of law, including such deprivation by means of threatened false

26   arrest, under the Fifth Amendment to the United States Constitution as applied under the

27   Fourteenth Amendment, and his fundamental liberty interest in the care, custody, and management

28

United States District Court
Northern District of California

1   of his child, which is protected by the Fourteenth Amendment." FAC ¶ 60.[3]   The Court addresses

2   each of these theories below.

### 1. First Amendment

4          Plaintiff's § 1983 claim under the First Amendment is based on the allegation that he has

5   been denied access to the Contra Costa County Office of the Department of Child Support

6   Services located in Martinez California since August 19, 2014. FAC ¶ 31.  In particular, Plaintiff

7   alleges that Adan Cardenas, Jr., employed by Contra Costa County as a Child Support Specialist

8   III, blocked his access to the Contra Costa County Office of the Department of Child Support

9   Services located in Martinez California  on August 19, 2014.  *Id*.  He further alleges that Linda

10  Dippell, Director of the Department of Child Support Services for Contra Costa County, ratified

11  the actions of Cardenas, and that Plaintiff has not been permitted to enter this office since August

12  19, 2014.   Plaintiff alleges that in doing so, individual Defendants Cardenas and Dippell infringed

13  his right "to observe, gather information about, scrutinize and criticize certain governmental

14  activities occurring there, and petition Defendant Contra Costa DCSS[4] for redress of grievances."

15  FAC ¶ 31.

16         Whether Plaintiff will ultimately prevail on his First Amendment claim depends on the

17  character of the property at issue.  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S.

18  37, 44 (1983) ("The existence of a right of access to public property and the standard by which

19  limitations upon such a right must be evaluated differ depending on the character of the property at

20  issue").  In *Perry*, the Court explained that there are three categories of public fora: 1) the

21  traditional public forum; 2) the designated public forum; and 3) the nonpublic forum.   *Id*. at  45-

22  47.

23         The first category includes "places which by long tradition or by government fiat have

[3] Plaintiff also invokes numerous provisions of the California Penal Code.  These alleged
violations are not actionable under 42 U.S.C. § 1983, which permits individuals to assert claims
for alleged violations of the United States Constitution or of a federal statute only.  *See Collins v.
City of Harker Heights, Tex*., 503 U.S. 115, 119 (1992) (§ 1983 "provides the citizen with an
effective remedy against those abuses of state power that violate federal law, it does not provide a
remedy for abuses that do not violate federal law").
[4] In fact, Plaintiff has not named Contra Costa DCSS as a Defendant.  He has, however, named
Contra Costa County as a Defendant.

United States District Court
Northern District of California

1   been devoted to assembly and debate," such as streets and parks.  *Id*. at 45.  In such places, "the

2   rights of the state to limit expressive activity are sharply circumscribed."  *Id*.

3       The second category "consists of public property which the state has opened for use by the

4   public as a place for expressive activity."  *Id*.  "Although a state is not required to indefinitely

5   retain the open character of [such a] facility, as long as it does so it is bound by the same standards

6   as apply in a traditional public forum."  *Id*. at 46.

7       Finally, "[p]ublic property which is not by tradition or designation a forum for public

8   communication is governed by different standards."  *Id*. at 46.  In particular, the Court has

9   recognized that "the 'First Amendment does not guarantee access to property simply because it is

10   owned or controlled by the government.' "  *Id*. (quoting *United States Postal Service v.*

11   *Greenburgh Civic Ass'n*,  453 U.S. 114, 129 (1981)).  Thus, "[i]n addition to time, place, and

12   manner regulations, the state may reserve the forum for its intended purposes, communicative or

13   otherwise, as long as the regulation on speech is reasonable and not an effort to suppress

14   expression merely because public officials oppose the speaker's view."  *Id*.;  *see also  Cornelius*

15   *v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 809 (1985) ("The

16   reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in

17   the light of the purpose of the forum and all the surrounding circumstances").

18       Here, Plaintiff has alleged no facts suggesting that the government office to which he was

19   denied entry is a traditional public forum or has been opened up for use by the public as a place for

20   expressive activity.  Thus, the Court assumes that defendant may impose reasonable restrictions as

21   to time place and manner and may reserve the forum for its intended purpose.  As plaintiff's

22   allegations indicate that he wished to enter the office in connection with his concerns about his

23   child support obligations, which is apparently the intended purpose of the office from which he

24   was excluded, the Court finds that Plaintiff has alleged sufficient facts to state a claim on this

25   basis.[5]

---

[5] The Court notes that the inquiry as to whether public property is a public or nonpublic forum is
27   fact specific, as is the question of whether a restriction is reasonable in cases involving a
nonpublic forum.  *See Albrecht v. Metropolitan Pier and Exposition Authority*, 338 F.Supp.2d
28   914, 923-924 (N.D. Ill. 2004).  Therefore, although the Court assumes for the purposes of its

11

United States District Court
Northern District of California

1

### 2.  Fourth Amendment

2      The Fourth Amendment protects persons against unreasonable searches and seizures. U.S.

3   Const. amend. IV.  A claim for unlawful arrest is cognizable under 42 U.S.C. § 1983 as a violation

4   of the Fourth Amendment.  *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir.2001).  The

5   Fourth Amendment also protects against detention without reasonable suspicion, *see Terry v.*

6   *Ohio*, 392 U.S. 1 (1968), and the use of excessive force.  *Graham v. Connor*, 490 U.S. 386 (1989).

7   Plaintiff has alleged none of these, however.  He has alleged only that his "freedom from

8   threatened arrest, seizure and search" was infringed.  A claim for *threatened* arrest, seizure or

9   search is not cognizable under the Fourth Amendment.  Further, Plaintiff has alleged no facts

10  regarding the "threatened arrest, seizure, or search."  Accordingly, to the extent Plaintiff's Section

11  1983 claim is based on an alleged violation of the Fourth Amendment, the claim is dismissed with

12  leave to amend.

### 3.  Due Process

13

14      The Fourteenth Amendment contains both procedural and substantive due process

15  protections. *United States v. Salerno*, 481 U.S. 739, 746 (1987). Plaintiff appears to be alleging

16  both types of due process claims.  In particular, his assertion that his due process rights were

17  violated based on his fundamental right to the care, custody and management of his minor child

18  appear to be based on his substantive due process rights, while his assertion that he was deprived

19  of liberty and property without due process of law appears to be a procedural due process claim.

20                          a.   Substantive Due Process

21      The substantive component of the Due Process Clause "forbids the government from

22  depriving a person of life, liberty, or property in such a way that shocks the conscience or

23  interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147

24  F.3d 867, 871 (9th Cir.1998) (internal quotations omitted).  It "protects individual liberty against

25

26  ─────────────────────────────────────────
    Section 1915 review that the office to which Plaintiff allegedly was denied entry is not a public
27  forum, it does not actually decide that question, which is more appropriately addressed at a later
    stage of the case.  Similarly, the Court's finding that Plaintiff states a claim based on his exclusion
28  from the office does not bar Defendants from seeking to establish that the restriction was
    reasonable.

*United States District Court*
*Northern District of California*

'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 1993).  However, "[s]ubstantive due process is ordinarily reserved for those rights that are 'fundamental." *Brittain v. Hansen*, 451 F.3d 982, 991-92 (9th Cir. 2006) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721–22 (1997)).  In the absence of a fundamental liberty interest, the government need only show that the intrusion is rationally related to the achievement of a legitimate government interest. *See Glucksberg*, 521 U.S. at 722.

As a general rule, parents have "a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children." *Miller v. California*, 355 F.3d 1172, 1175 (9th Cir. 2004). Consequently, "parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernardino County Dep't of Soc. Services*, 237 F.3d 1101, 1107 (9th Cir. 2001).  Even where a court has limited the parent's custodial rights, the parent's liberty interest is reduced but may not be eliminated altogether. *See Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006).  For example, in *Brittain*, the court held that a non-custodial parent who has visitation rights under a court order had a liberty interest in those visitation rights that might support a due process claim if violated.  *Id*. at 992.

Plaintiff, however, does not challenge any conduct that violates a liberty interest in the care and custody of his child.  In particular, he does not dispute that he does not have custodial rights or even any visitation rights as to his minor child.  To the contrary, he points to the Florida Order in support of his assertion that his parental rights have been terminated and does not allege anywhere in the complaint that the decision of the Florida Court itself constituted a violation of his right to due process.   Further, the Florida Order eliminates Plaintiff's parental responsibility and time-sharing.  Thus, the order affords Plaintiff no rights that might be the subject of a due process claim based on the parental right to care, custody or control of a minor child.  Therefore, Plaintiff's due process claim fails to the extent it is based on Plaintiff's purported liberty interest in the care,

1    custody and control of his child.

2                b.   Procedural Due Process

3          Plaintiff also contends he has been deprived of liberty and property without due process of

4    law.   To the extent his claim is based on an alleged deprivation of liberty, Plaintiff fails to state a

5    claim.   The allegations in the complaint are sufficient to survive Section 1915 review as to his due

6    process claim to the extent it is based on the assertion that the County of Contra Costa is

7    attempting to collect child support payments he does not owe, however.

8          Plaintiff does not allege any facts showing that he has been deprived of liberty without

9    due process of law. The Fourteenth Amendment's Due Process Clause protects individuals against

10   deprivations of liberty without due process of law. U.S. Const., amend. XIV.  Thus, for example,

11   due process requires that  individuals may be incarcerated only on the basis of a criminal

12   conviction.  *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.2002).  Further, an individual cannot be

13   detained prior to trial except upon a showing of probable cause at the time of arrest.  *Baker v.*

14   *McCollan*, 443 U.S. 137, 142 (1979).  Here, however, Plaintiff has alleged no facts showing that

15   he was deprived of liberty in violation of his right to due process.   At most, he has alluded to

16   "threatened arrest" (though he has not included any specific facts in his complaint to support this

17   conclusory allegation). Therefore, Plaintiff fails to state a claim based on deprivation of liberty

18   without due process of law.

19         On the other hand, to the extent Plaintiff asserts that Defendants are attempting to collect

20   child support payments that he does not owe, Plaintiff has asserted a colorable due process claim.

21   The due process clause protects property interests, which "are created and their dimensions are

22   defined by existing rules or understandings that stem from an independent source such as state

23   law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Here, Plaintiff

24   alleges that under Florida state law, he does not owe child support payments, citing the Florida

25   Order.  That order eliminates Plaintiff's right to participate in any decision-making about his child

26   and takes away his time-sharing rights as to his child.  Under Florida law, a parent's obligation to

27   support a minor child "is not affected by the fact that the custody of the children has been taken

28   from the parent by a decree of a court of competent jurisdiction." *Engle v. Engle*, 323 So.2d 658,

United States District Court
Northern District of California

14

659 (1975).  However, where parental rights have been terminated, the parent has no further

obligation to pay child support.  *Ponton v. Tabares*, 711 So.2d 125, 126 (1998).  The Court does

not have a complete record before it that would allow it to make a determination as to whether

Plaintiff's parental rights were, in fact terminated under Florida law.  Therefore, the Court

concludes that it this early stage of the case, Plaintiff's procedural due process claim based on

Defendants' efforts to collect child support payments from him is sufficient to survive the Court's

preliminary review.

### 4.  *Monell* Liability

Plaintiff  alleges that the individual defendants who improperly excluded him from the

DCSS office and collected child support payments he did not owe did so as a result of improper

training and supervision and acted according to policies and customs of, *inter alia*, indifference to

the misconduct of employees and making it difficult for citizens to file complaints about employee

misconduct.  FAC ¶¶ 46-49.  He also alleges that Defendant Dippell, who is the director of DCSS

and an employee of Contra Costa County, ratified the actions of the individual who excluded

Plaintiff from the office.  These allegations are sufficient to survive Section 1915 review as to

Contra Costa County under *Monell*.  *See Gillette v. Delmore*, 979 F.2d at  1347.  On the other

hand, Plaintiff has not alleged facts sufficient to establish *Monell* liability as to Defendant CHHS.

In particular, Plaintiff's allegations as to CHHS are entirely conclusory and he has not identified

any individual acting on behalf of CHHS whose conduct may have violated his constitutional

rights or given rise to *Monell* liability.  *See, e.g*., FAC ¶ 3 (alleging that CHHS is "the public

employer of several heretofore Unidentified Defendants").  The Court notes that all of the

individuals who have been named in this action (Dippel, Self, Linnell and Cardenas) are alleged to

be employees of Contra Costa but that none of these individuals is alleged to be an employee of

CHHS.

### C.    Claim Two (Bane Act, Cal. Civ. Code § 52.1)

California Civil Code § 52.1 allows an individual to bring a civil action for damages where

"a person or persons, whether or not acting under color of law, interferes by threats, intimidation,

or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or

enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." To prevail on a Bane Act claim, a plaintiff must demonstrate: 1) an act of interference with a legal right by 2) intimidation, threats or coercion. *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998). Plaintiff's claim is alleged only in a conclusory manner, however.  Plaintiff does not identify the specific conduct he alleges constituted "threats, intimidation, or coercion."  Nor does he explain how that conduct interfered with any specific right under the Constitution or under federal or state law. Therefore, this claim is dismissed with leave to amend.

### D.     Claim Three (Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52)

The Unruh Civil Rights Act  provides that [a]ll persons within the jurisdiction of this state are free and equal, and no matter what their ... disability, [or] medical condition ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b).  In 1992, the Act was amended to provide that a violation of the right of any individual under the ADA also constituted a violation of the Act.  *Id.* § 51(f).  Plaintiff refers in his complaint to an unspecified disability.  *See* FAC, ¶¶ 38-41.  He does not, however, allege any specific facts that support an inference that he was subject to discrimination on the basis of a disability.  Therefore, this claim is dismissed with leave to amend.

### E.     Claims Four through Ten (state common law claims)

In Claims Four through Ten, Plaintiff asserts common law claims against the individual defendants, all of whom are employees of public entities. Where defendants are employees of a public entity, the plaintiff must allege compliance with the California Tort Claims Act to state a claim. *Jackson v. California*, 2014 WL 670104, at *9 (E.D. Cal., Feb. 20, 2014) (citing Cal. Gov't Code § 950.6; *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234,  1239 (2004)). Under the California Tort Claims Act, a tort claim against a public entity or its employees must be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Suit may not be brought until the Board has rejected or acted on the claim. *Bodde*, 32 Cal. 4th at

United States District Court
Northern District of California

1239.  Because Plaintiff has not alleged that he has presented his state common law claims to the Board or that the claims have been rejected or acted upon, all of his common law claims are subject to dismissal with leave to amend to allege facts showing that he has complied with the California Tort Claims Act.  To the extent Plaintiff may be able to remedy this deficiency, the Court addresses below the sufficiency of Plaintiff's allegations in support of his common law claims.

### 1.  Claim Four (Intentional Infliction of Emotional Distress)

To prevail on a claim for intentional infliction of emotional distress a plaintiff must establish: "1) outrageous conduct by the defendant, 2) intention to cause or reckless disregard of the probability of causing emotional distress, 3) severe emotional suffering and 4) actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n.7 (1987). Liability for intentional infliction of emotional distress generally "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' but only to conduct so extreme and outrageous 'as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 499 (quoting Rest.2d Torts, § 46, com. d).

Plaintiff alleges that the individual Defendants have attempted to collect child support payments from him even though his parental rights have been terminated and (according to Plaintiff) employees of CHHS and the County of Contra Costa have acknowledged as much.  He also alleges that he has been excluded from the CHHS office and thereby prevented from petitioning for redress.  As a consequence, he alleges, he has suffered severe emotional distress. The Court finds that these allegations would be sufficient to survive the Court's preliminary review as to Plaintiff's claim for intentional infliction of emotional distress assuming Plaintiff is able to amend to allege compliance with the California Tort Claims Act.

### 2.  Claim Five (Intentional Interference with Contractual Relations – Kaiser)

Plaintiff asserts a claim for intentional interference with contractual relations against "all individual defendants employed by Defendant FDOR" on the basis that they attempted to collect from Plaintiff's former employer, Kaiser, child support payments he did not owe.   As these

United States District Court
Northern District of California

1 │ defendants are not identified, this claim is asserted against "Doe" defendants.

2 │     To state a claim for intentional interference with contractual relations, a plaintiff must

3 │ allege the following elements: (1) a valid contract between plaintiff and a third party; (2)

4 │ defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a

5 │ breach or disruption of the contractual relationship; (4) actual breach or disruption of the

6 │ contractual relationship; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,

7 │ 50 Cal.3d 1118, 1126 (1990).

8 │     Plaintiff alleges that he had a contractual relationship with Kaiser of which unidentified

9 │ employees of FDOR were aware and that those individuals, "under the pretext of collecting child

10 │ support payments," interfered with Plaintiff's contractual relationship with Kaiser.  FAC ¶¶20-24.

11 │ His allegations are entirely conclusory, however.  He does not allege any specific facts to show the

12 │ existence of a contract or how any FDOR employee may have been aware of the contract.  Nor

13 │ does he allege any facts as to *how* these individuals interfered with his contract or showing that

14 │ Plaintiff's contractual relationship with Kaiser was damaged as a result of their conduct.

15 │ Accordingly, the Court finds that the allegations are insufficient as to this claim.[6]

16 │

17 │     **3.  Claim Six (Intentional Interference with Contractual Relations – Bank of America)**

18 │     Plaintiff also asserts a claim for intentional interference with contractual relations against

19 │ "all individual defendants employed by Defendants CHHS and Contra Costa."  Plaintiff's

20 │ allegations in support of this claim are somewhat more specific than his allegations in support of

21 │ Claim Five.  In particular, he alleges that the defendants knew of his accounts with Bank of

22 │ America and interfered with his contractual relationship with Bank of America by placing an

23 │

24 │ ─────────────────────

    [6] The Court notes that although the use of Doe defendants is not favored in the Ninth Circuit,

25 │ where the identity of alleged defendants cannot be known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify them.  *See Gillespie v.*

26 │ *Civiletti*, 629 F.2d 637, 642 (9th Cir.1980).  Nonetheless, even as to Doe defendants, a plaintiff must allege sufficient facts to state a claim to survive dismissal on the pleadings.  *See Lopez v.*

27 │ *Bank of America*,  2011 WL 1134671, at *3 (E.D.Cal., March 28, 2011) (recognizing that plaintiffs generally should be permitted to pursue discovery as to identity of Doe defendants but

28 │ dismissing Doe defendants for failure to state a claim because they were only named in the caption and the court had "no clue why the John Does [were] being named as defendants").

1    Order to Withhold on two of Plaintiff's accounts, even though Defendant Linnell had

2    acknowledged that the Florida Order terminated all of Plaintiff's parental rights.  FAC ¶¶ 26-28.

3    Construing the complaint liberally in light of Plaintiff's pro se status, the Court concludes these

4    allegations would be sufficient to survive Section 1915 review assuming Plaintiff is able to amend

5    to allege compliance with the California Tort Claims Act.

6    ### 4.  Claim Seven (Fraud)

7        Plaintiff asserts his fraud claim against all individual defendants based on alleged false

8    representations and omissions. The elements of fraud are "(a) a misrepresentation (false

9    representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent

10   to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town*

11   *Ctr.*, 135 Cal.App. 4th 289, 294 (2005) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638

12   (1996)).  Further, the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil

13   Procedure apply in federal court. Rule 9(b) requires a party to "state with particularity the

14   circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

15   person's mind may be alleged generally." Fed.R.Civ.P. 9(b).  Plaintiff has not alleged specific

16   facts concerning the circumstances of the alleged fraud, having failed to even identify the specific

17   misrepresentations or omissions upon which it is based or to allege any facts demonstrating the

18   remaining elements of fraud, namely, scienter, intent to induce reliance, justifiable reliance and

19   resulting damage.  Therefore, Plaintiff's fraud claim is insufficiently pled.

20   ### 5.  Claim Eight (Defamation)

21       Plaintiff asserts a claim for defamation against all of the individual defendants in the case.

22   Under California law, the elements for a claim for defamation are 1) a publication, 2) that is false,

23   3) defamatory, and 4) unprivileged, and 5) that has a natural tendency to injure or that causes

24   special damage. *Taus v. Loftus*, 40 Cal.4th 683, 720, 54 Cal.Rptr.3d 775, 151 P.3d 1185 (2007).

25   While the exact words or circumstances of the defamation need not be alleged, the substance of

26   the defamatory statement must be alleged to state a claim.  *Silicon Knights, Inc. v. Crystal*

27   *Dynamics, Inc.*, 983 F.Supp. 1303, 1314 (N.D.Cal.,1997). Plaintiff has merely alleged that all of

28   the individual defendants have published false and unprivileged statements that hold him in a false

United States District Court
Northern District of California

19

light, without identifying any specific statement upon which the claim is based.  Therefore, Plaintiff's defamation claim is insufficiently pled.

### 6.   Claim Nine (Negligence)

To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "1) duty; 2) breach; 3) causation; and 4) damages." *Ileto v. Glock Inc*., 349 F.3d 1191, 1203 (9th Cir. 2003) (citation omitted).  With respect to negligence by a public employee, such an employee is generally "liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820(a).  Here, Plaintiff's negligence claim is entirely conclusory.  He does not allege facts showing that each individual defendant has owed Plaintiff a duty.  Nor does he allege facts showing that any specific duty was breached.  Therefore, the Court concludes this claim is insufficiently pled.

### 7.   Claim Ten (Trespass to Chattels)

The tort of trespass to chattels "lies where an intentional interference with possession of personal property has proximately caused injury." *Intel Co. v. Hamidi*, 30 Cal.4th 1342, 1350 (2003).  Plaintiff alleges that all Defendants have intentionally intermeddled with his possession of his funds by collecting child support he does not owe.  As to the individual defendants, Plaintiff's allegations would be sufficient to survive the Court's Section 1915 review were Plaintiff to allege compliance with the California Tort Claims Act.  As to the public entities, Plaintiff's allegations are not sufficient because in California, a governmental entity can only be sued in tort pursuant to an authorizing statute or enactment . *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 840 (9th Cir. 1996).  Plaintiff has not identified any statutory authority that permits him to assert a claim for trespass to chattel against the public entity defendants.  Accordingly, the claim is insufficiently alleged.

### F.   Claim Eleven (Conspiracy)

"The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal.4th 503, 511 (1994) (citations omitted). "Conspiracy is not a cause of action, but a legal doctrine that imposes liability

20

on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Id*. Assuming conspiracy may be asserted as a stand-alone claim, "there must be some factual content pled to support the conspiracy claim." *See Yagman v. Galipo*, 2013 WL 141785, at *13 (C.D.Cal., Jan. 7, 2013). Plaintiff has not identified any specific facts to support this claim. Therefore, the claim is dismissed with leave to amend.

### G.   Claim Thirteen (Declaratory Judgment, 28 U.S.C. § 2201(a))

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd*., 41 F.3d 764, 775 (1st Cir.1994). The DJA "merely offers an additional remedy to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir.1997). To the extent the Court has found that Plaintiff has alleged sufficient facts as to his claim under 42 U.S.C. § 1983, there is an actual controversy. Whether the Court should exercise its discretion to award declaratory relief is an issue more appropriately addressed at a later stage of the case. Therefore, Plaintiff's allegations are sufficient to survive the Court's Section 1915 review.

### H.   Claim Fourteen (Injunctive and Declaratory Relief Pursuant to California Code of Civil Procedure § 526a)

California Code of Civil Procedure § 526a authorizes taxpayer actions "restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county . . . against any officer thereof." Cal. Civ. Proc. Code § 526a. Under this provision, a taxpayer may sue to enjoin wasteful expenditures by state agencies as well as local governmental bodies. *Cates v. California Gambling Control Com*., 154 Cal.App.4th 1302, 1308 (2007). "While the statute speaks of injunctive relief, taxpayer standing has also been extended to actions for declaratory relief." *Id*. The term "waste" "has been described as 'a useless expenditure ... of

United States District Court
Northern District of California

public funds' that is incapable of achieving the ostensible goal." *Chiatello v. City and County of San Francisco*, 189 Cal.App.4th 472, 482 (2010) (quoting *Harnett v. County of Sacramento,* 195 Cal. 676, 682-683 (1925)). It also "reaches outright fraud, corruption, or collusion." *Id*. (citing *Harman v. City and County of San Francisco*, 7 Cal.3d 150, 160, (1972); *Nickerson v. San Bernardino,* 179 Cal. 518, 522-523 (1918)). "Waste does not encompass the great majority of governmental outlays of money or the time of salaried governmental employees, nor does it apply to  the vast majority of discretionary decisions made by state and local units of government." *Id*. As the court in *Chiatello* explained, to avoid "constant harassment of city and county officers by disgruntled citizens," "courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure that does not meet with a taxpayer's approval." *Id*. (internal quotations and citations omitted).

Plaintiff alleges that he is entitled to injunctive and declaratory relief against Defendants CHHS and Contra Costa and their employees based on their allegedly wrongful collection of child support from him.  He does not, however, allege facts that persuade the Court that this is the type of expenditure that constitutes "waste" under Section 526a.  In particular, the Court notes that while Plaintiff has included conclusory allegations of fraud and conspiracy in his FAC, he has alleged no specific facts in support of those allegations.  Accordingly, the Court dismisses this claim with leave to amend.

## IV.     CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff has alleged sufficient facts to support his claims under 42 U.S.C. § 1983 based on alleged violation of his First Amendment and Due Process rights by Defendants Dippel, Self, Linnel and Cardenas and, under *Monell*, Contra Costa County.  Plaintiff's remaining claims are dismissed with leave to amend for the reasons stated above.  Plaintiff may file an amended complaint to address the deficiencies

United States District Court
Northern District of California

identified in this Order within thirty (30) days of the date of this Order.  The Court will determine whether service of the amended complaint is appropriate at that time.

**IT IS SO ORDERED.**

Dated: January 8, 2015

_____
JOSEPH C. SPERO
United States Magistrate Judge