UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GEARY WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>FLORIDA DEPARTMENT OF REVENUE, et al.,<br><br>    Defendants. | Case No. 14-cv-04726-JCS<br><br>**ORDER REVIEWING SECOND AMENDED COMPLAINT UNDER 28 U.S.C. § 1915** |

## I. INTRODUCTION

In an order filed January 8, 2015 (the "January 8, 2015 Order"), the Court dismissed in part Plaintiff's First Amended Complaint with leave to amend, pursuant to 28 U.S.C. § 1915(e)(2)(B). On February 14, 2015, Plaintiff filed a Second Amended Complaint. For the reasons stated below, the Court dismisses the Second Amended Complaint in part and orders the United States Marshal to serve the First Amended Complaint, the Second Amended Complaint, a copy of the Court's January 8, 2015 Order, any scheduling orders, and this Order, on the following Defendants: Dippel, Linnell, Self, Cardenas and the County of Contra Costa.[1]

## II. BACKGROUND

In the First Amended Complaint ("FAC"), Plaintiff asserted fourteen claims against seven defendants. In the January 8, 2015 Order, the Court found that Plaintiff had alleged sufficient facts to support his claims under 42 U.S.C. § 1983 based on alleged violation of his First Amendment and Due Process rights by Defendants Dippel, Self, Linnell, Cardenas and Contra Costa County. *See* Docket No. 16. In particular, the Court found that: 1) Plaintiff's allegations

---

[1] Plaintiff has consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

relating to events that occurred on August 19, 2014, when he was allegedly prohibited from entering Country Costa County's Department of Child Support Services, were sufficient to state a § 1983 claim under the First Amendment against Defendant Contra Costa County and individual Defendants Cardenas and Dippel; 2) Plaintiff's allegations that Contra Costa County and individual Defendants Dippel, Linnell and Self have wrongfully attempted to collect child support payments, despite a June 13, 2011 order by a Florida court purportedly terminating his parental rights, were sufficient to state a § 1983 claim under the Due Process clause. *Id*. The Court further found that Plaintiff's remaining claims were insufficiently pled and dismissed those claims with leave to amend.

In his Second Amended Complaint ("SAC"), Plaintiff has sued six of the seven original defendants (he has dropped the California Health and Human Services Agency) and added seventy-five new defendants, asserting fifty-one claims in a 182-page complaint that includes 120 pages of detailed factual allegations. Plaintiff alleges that he has been the victim of a "modern-day, Western-style 'death by a thousand cuts'" by the defendants, the "ultimate aim [of which] is to create enough pressure on Plaintiff in California to extort him into paying to stop the campaign against him and relinquish his legal claims to his natural and constitutionally protected rights to a parent-child relationship" with his minor daughter, "G". SAC ¶¶ 1-4. According to Plaintiff, this campaign dates back to 2005, when Defendant Jami Caroline Wilson, the mother of "G", allegedly conspired with a Florida family law attorney, Darby Fitzgerald Hertz, and "other co-conspirators" to destroy Plaintiff's relationship with his daughter and to "execut[e] a parental kidnapping of G from Plaintiff." SAC ¶ 1.

Plaintiff further alleges that many of the defendants named in the SAC have engaged in an ongoing criminal enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and that these "RICO Defendants" have engaged in "a series of corrupt acts." SAC ¶ 6. These acts allegedly include the following:

> [T]hey have fraudulently induced Plaintiff to temporarily leave California, repeatedly discriminated against him on the basis of his disability, threatened and perpetrated physical violence against him, procured sham criminal charges against him, stolen money and tangible property from him, coerced him into signing documents

against his will, destroyed his evidence against them, and submitted fabricated evidence against him in various forms, including false testimony by Defendant J. Wilson and a report from a court's sole "expert" whose appointment they secretly arranged. Then some of them secretly met with the "expert" to plan her fake report to say what they wanted it to say. In addition, some of the RICO Defendants have adopted a strategy to leverage their relationships with corrupt family law judges, whom they have described as making decisions based on who curries the most favor with them, not based on what the laws should dictate. After causing some corrupt local government employees and officers, including some of those corrupt family law judges, to violate and/or deny Plaintiff many of his constitutional rights that they were sworn to protect, some of the RICO Defendants paid the aforementioned "expert" to invent and report harm done to G by Plaintiff, which they never filed in writing in any court. Instead, Defendants J. Wilson and Hertz touted in a sham hearing via the coconspirator "expert" and obtained alleged "orders" from Defendant Toby S. Monaco, who evidently did not audio record or allow a court reporter to transcribe the sham hearing in order to avoid creating a reviewable record of his wrongful acts, that officially terminated the parent-child relationship between Plaintiff and G. In so doing, they also officially terminated Plaintiff's child support obligation toward G, but have nonetheless taken his money in her name.

SAC ¶ 6. Plaintiff names as defendants, *inter alia*, numerous individuals who are allegedly related to Jami C. Wilson, several attorneys and law firms, state courts in California and Florida, nine judges and various court staff, security guards employed by the Custody Services Bureau of the Contra Costa County Sheriff's Office, several counties (both in Florida and California), and former employers Kaiser Foundation Health Plan, Inc. ("Kaiser") and Rockhill Insurance Group ("Rockhill").

In the SAC, Plaintiff asserts the following federal claims: 1) violations of RICO, 18 U.S.C. § 1962(c) & (d) (Claims One and Two); 2) violations of 42 U.S.C. § 1983 based on alleged violations of the First, Fourth and Fourteenth Amendments by individuals and public entities (Claims Three and Fifty) ; 3) violations of 42 U.S.C. § 1985(2) & (3) (Claims Four and Five); 4) 42 U.S.C. § 1986 (Claim Six); 4) 18 U.S.C. § 1030 (Claim Seven);  5) violation of 42 U.S.C. § 12132 (Claim Twenty-Nine); and 6) a claim for a declaratory judgment under 28 U.S.C. § 2201(a) that Plaintiff does not have any ongoing child support obligation toward G and has not had such an obligation since June 13, 2011.  In addition, Plaintiff asserts forty-two state law claims, including both common law and statutory claims.

## III. ANALYSIS

### A. Legal Standard under 28 U.S.C. § 1915[2]

If a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is permitted to proceed in forma pauperis, the court must undergo a preliminary screening of the complaint and dismiss any claims which: (1) are frivolous and malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim for relief, Plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When reviewing the sufficiency of the Complaint, the Court takes "all allegations of material fact as true and construe(s) them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990). The "tenet that a court must accept a complaint's allegations as true," however, "is inapplicable to . . . mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547). In evaluating the sufficiency of the complaint, the court generally looks only to the face of the complaint and the documents attached thereto. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Complaints filed by *pro se* litigants must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Legal Standards Governing Joinder of Parties and Claims

Under Rule 18 of the Federal Rules of Civil Procedure, which governs joinder of claims, a plaintiff may bring multiple claims, whether they are related or not, in a lawsuit against a single defendant. *See Sua v. Espinda*, Case No. 09-cv-0592 SOM, 2010 WL 184314, at * 2 (D. Hawai'i Jan. 19, 2010). On the other hand, where a Plaintiff names different defendants in the same lawsuit, the requirements of Rule 20, governing permissive joinder, must be satisfied. *Id*. "Permissive joinder of multiple defendants in a single lawsuit is allowed only if: (1) a right to

---

[2] The Court set forth the applicable legal standard in its January 8, 2015 Order. For the convenience of the reader, the legal standard is repeated here verbatim.

4

relief is asserted against each defendant that relates to or arises out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties arises in the action." *Id*. (citing Fed.R.Civ.P. 20(a)(2)). Thus "[u]nrelated claims involving different defendants belong in different suits." *Id.* (citing *Aul v. Allstate Life Ins. Co*., 993 F.2d 881, 884 (9th Cir. 1993); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001)). When there is a misjoinder of parties or claims, the court may on its own motion drop any party or sever any claim. *Id*. (citing Fed.R.Civ.P. 21).

### C. Federal Claims

#### 1. RICO Claims (Claims One and Two)

Plaintiff's RICO claims are based on the contention that the RICO Defendants and various co-conspirators have engaged in an ongoing criminal enterprise to "coerce Plaintiff into relinquishing his claims to a parent-child relationship with G," and have engaged in wrongful conduct that resulted in a June 13, 2011 Order (the "June 13, 2011 Order") by a Florida Court that terminated his relationship with G – an order that Plaintiff describes as "fraudulent, false and defamatory." SAC ¶¶ 393, 418. At the same time, he alleges, these defendants have engaged in wrongful conduct aimed at the collection of child support payments that Plaintiff contends he no longer owes in light of the June 13, 2011 Order. SAC ¶ 407. The Court concludes that these claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine precludes a litigant in federal court from trying to undo a prior state court ruling. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). In particular, it prohibits a federal district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "de facto equivalent" of such an appeal. *Cooper v. Ramos*, 704 F.3d 772, 776 (9th Cir. 2012) (quoting *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir.2003)). The Ninth Circuit has cautioned that courts must be "careful not to sweep too broadly" in applying the *Rooker-Feldman* doctrine. *Id*. Thus, "[t]he doctrine does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court." *Id*. (citing *Skinner v.*

*Switzer*, 562 U.S. 521, 131 S.Ct. 1289, 1297, 179 L.Ed.2d 233 (2011)). It applies, however, when a claim asserted in federal court is "inextricably intertwined" with an issue resolved by a state court in its judicial decision. *Noel v. Hall*, 341 F.3d at 1158. A claim meets this test if "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." a plaintiff in federal court "essentially invite[s] federal courts of first instance to review and reverse unfavorable state-court judgments." *Cooper*, 704 F.3d at 779 (internal qutations and citations omitted).

Here, Plaintiff's RICO claims are based on the theory that the June 13, 2011 Order purportedly terminating his parental rights was procured through the wrongful conduct of the RICO defendants and the alleged co-conspirators. *See, e.g.,* SAC ¶ 418 ("the RICO Defendants caused the repeated denials of a hearing on Plaintiff's [motion to dismiss in the Florida custody case], Plaintiff's exclusion from a sham hearing on June 1, 2011 that led to a fraudulent, false and defamatory order eliminating his rights to a parent child relationship with G, Plaintiff's exclusion from multiple hearings on the validity of multiple orders and whether to vacate them, and other many other matters affecting Plaintiff's legal claims to a parent-child relationship with G"); ¶ 416 ("The RICO Defendants' false and misleading statements have been relied on by . . . the Florida Court by means of its acceptance of Defendants' and the "expert's" misrepresentations and omissions and its failure to take meaningful corrective action"). As a result, adjudication of Plaintiff's RICO claim would require the Court to determine whether the decision of the Florida court is valid and enforceable. Indeed, in connection with his RICO claims, Plaintiff expressly requests that this court enter a temporary injunction enjoining defendants "from commencing, prosecuting, or advancing in any way - directly or indirectly - any attempt to recognize or enforce any Florida Court, Alameda Superior Court or CCSC judgment . . . until this Court determines the merits and enters judgment on Plaintiff's claims against the Defendants in this action." SAC ¶ 428. The Court concludes that Plaintiff's claims are inextricably intertwined with the decision of the Florida court in the June 13, 2011 Order[3] and constitute an impermissible de facto appeal of

---

[3] Though the record is not yet developed, it appears that Plaintiff's claims are likely aimed at other state court decisions as well. *See* SAC ¶ 408 (alleging that "the RICO Defendants conspired with

1  that order.  Therefore, the Court dismisses Plaintiff's RICO claims, in their entirety, with prejudice
2  and without leave to amend.

### 2. Claims Under 42 U.S.C. § 1983 (Claims Three and Fifty)

As he did in the FAC, Plaintiff asserts a claim in his SAC under 42 U.S.C. § 1983.  The scope of the claim asserted in the SAC is much broader, however, than Plaintiff's previous § 1983 claim.  In particular, he asserts the claim on the basis of the following alleged constitutional violations: 1) First Amendment retaliation based on alleged adverse actions in response to Plaintiff's efforts to "petition[ ] the government for redress of grievances, express[ ] his viewpoint and gather[ ] information about governmental activities (law enforcement) by openly recording it"; 2) Fourth Amendment unreasonable detention and arrest by the security guard defendants who are employed by public entities (the "Security Guard Defendants") based on allegations that "[n]o detentions or warrantless arrest was justified in this case because there was no probable cause or urgent need present prior to any of the detentions or arrests;" 3) Fourth Amendment unreasonable warrantless searches against the Security Guard Defendants based on allegations that these defendants "carried out unreasonable searches of Plaintiff's person and property, including his messenger bags, portfolios, privileged and/or confidential documents, privileged and/or confidential conversations with licensed healthcare providers, computers, medical records, background and automobiles" pursuant to the unreasonable detentions and/or arrests; 4) Fourth Amendment due process against the Security Guard Defendants based on their alleged deliberate indifference or actual malice in refusing to call for emergency medical care despite Plaintiff's serious medical need during his initial detention and subsequent arrest;  5) Fourth Amendment

---

Alachua, the Florida Court, Alameda, Alameda Superior Court, Florida DOR, Contra Costa and CCSC, by and through certain officers and other employees in their non-judicial, non-prosecutorial and individual capacities, to advance four fraudulent, false and defamatory administrative orders, three fraudulent, false and defamatory child custody orders, two fraudulent, false and defamatory child support orders, one or more fraudulent, false and defamatory orders imposing other financial liability, four false arrests, three unfounded criminal charges, two malicious prosecutions, one fraudulent wage assignment, fraudulent levies on two bank accounts and other fraudulent, false and/or defamatory documents against Plaintiff in order to defraud and extort legal claims, payments and other property from Plaintiff").  The Court need not reach whether Plaintiff's allegations relating to these decisions also implicate the *Rooker-Feldman* doctrine.

7

1 unreasonable conditions of confinement based on allegation that he was "experiencing a medical
2 emergency before, during and/or after three of Defendants' four false, unreasonable and
3 warrantless arrests of him" and that "Defendants knew the conditions created a substantial risk of
4 serious harm to Plaintiff and disregarded that risk by failing to take reasonable measures to correct
5 it" with respect to "all four false, unreasonable and warrantless arrests;" and 6) Fourth
6 Amendment equal protection based on allegation that "Plaintiff was and is an atheist with a
7 disability and low economic status who was engaging in constitutionally protected activities
8 during all of his encounters with Defendants" and that Defendants discriminated against him based
9 on his disability. SAC ¶¶ 429-482. Plaintiff also alleges that he was "depriv[ed] of liberty and
10 property without due process of law under the Fourteenth Amendment to the United States
11 Constitution." SAC ¶ 431.

12     As discussed above, in the January 8, 2015 Order, the Court found that Plaintiff stated
13 cognizable claims under § 1983 based on his allegations that he was prohibited from entering the
14 Contra Costa County Department of Child Support Services on August 19, 2014 (First
15 Amendment) and that the County of Contra Costa and individual Defendants Dippel, Linnell and
16 Self have wrongfully attempted to collect child support payments from Plaintiff. Construing
17 Plaintiff's allegations liberally, these claims are related because Plaintiff alleges that when he
18 sought to enter the Department of Child Support Services on August 19, 2014, he was seeking to
19 "petition Contra Costa Costa for redress of grievances." SAC ¶ 309. As one of the primary
20 grievances highlighted in the SAC is the attempts to collect child support from Plaintiff by Contra
21 Costa County and employees of the Department of Child Support Services, these claims are
22 sufficiently related to be properly joined in a single action.

23     Plaintiff's new § 1983 claims are not limited to the original defendants named in the FAC,
24 however; rather they are asserted against *all* individual defendants employed by public entities
25 and, under *Monell*, *all* public entities named as defendants. To the extent the § 1983 claims
26 asserted in the SAC are asserted against different defendants than were named in the FAC, these
27 claims may only be joined in the instant action if they "aris[e] out of the same transaction,
28 occurrence, or series of transactions or occurrences." Fed.R.Civ. P. 20(a)(2)(A); *see also Sua v.*

*Espinda*, Case No. 09-cv-0592 SOM, 2010 WL 184314, at * 2 (Jan. 19, 2010) ("[u]nrelated claims involving different defendants belong in different suits") (citing *Aul v. Allstate Life Ins. Co.*, 993 F.2d 881, 884 (9th Cir. 1993); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001)).

The Court has reviewed the extensive allegations in Plaintiff's SAC and finds that Plaintiffs have stated viable claims against Dippel, Self, Linnell, and Cardenas for the same reasons stated in the January 8, 2015 Order, based on an alleged First Amendment violation in connection with the events of August 19, 2014 and the alleged denial of due process based on attempted collection of child support payments. These defendants are not, however, alleged to have detained, arrested or searched Plaintiff; nor has Plaintiff alleged that they denied his requests for medical care, detained him under unreasonable conditions or discriminated against him on the basis of a disability. Thus, these theories apply only to the new individual defendants who were added to the SAC, none of whom is alleged to have been involved in the events of August 19, 2014 or the collection of custody payments from Plaintiff. Rather, Plaintiff's allegations regarding discrimination based on disability or being an atheist, detention, arrests, searches and requests for medical care involve entirely different transactions and occurrences. As such, except to the extent the Court has found that Plaintiff continues to state viable claims against Dippel, Self, Linnell and Cardenas, and to state viable *Monell* claims against Contra Costa County based on the conduct of those individual defendants, all of the § 1983 claims asserted in the SAC do not belong in this lawsuit and are therefore dismissed without prejudice to reasserting them in a separate action and without leave to amend.

### 3. Claims Under 42 U.S.C. § 1985 and § 1986 (Claims Four, Five and Six)

Plaintiff asserts claims under 42 U.S.C. § 1985(2) and (3) based on allegations that all of the Defendants in the SAC engaged in a conspiracy to deny him equal protection of the law by discriminating against him because he is "an atheist with one or more disabilities and low economic status." He asserts an additional claim under 42 U.S.C. § 1986, which establishes liability on the part of persons who had knowledge of wrongs that are about to be committed in violation of § 1985 and could have prevented the wrongful act with reasonable diligence but failed

1    to do so. The Court finds that these claims are improperly joined in the instant action.

2    Although Plaintiff asserts these claims against all Defendants, there are no specific facts
3    in the SAC that support these claims as to the Defendants named in the FAC. Rather, the specific
4    factual allegations upon which these claims appear to be based involve different events and
5    different defendants than those at issue in the FAC. *See* SAC ¶¶ 325-333 (allegations relating to a
6    proceeding on September 2, 2014 in the Contra Costa Superior Court in which court staff
7    allegedly required Plaintiff to take a religious oath and delayed proceedings when he refused and
8    also revealed in open court confidential information about Plaintiff's disability), ¶¶ 245-251
9    (alleging that certain defendants conspired against Plaintiff in December 2013 and January 2014 to
10   take advantage of his disability and trigger panic attacks in order to prevent Plaintiff from
11   accessing public resources and services in connection with a custody case in Contra Costa
12   Superior Court), ¶¶ 262-263 (allegations relating to February 20, 2014 events when a defendant
13   who had blocked access to the Contra Costa Superior Court subsequently followed Plaintiff to
14   harass and intimidate him and trigger a panic attack). Because these claims are unrelated to the
15   claims asserted against the defendants in the FAC, they do not satisfy the joinder requirements of
16   Fed. R. Civ. P. 20(a) and therefore are not appropriately asserted in this action. These claims are
17   dismissed without prejudice to reasserting them in a separate action and without leave to amend.

### 4. 18 U.S.C. § 1030 (Claim Seven)

Plaintiff asserts a claim under 18 U.S.C. § 1030(g), which establishes civil liability on the part of an individual who is harmed by criminal acts that violate 18 U.S.C. § 1030(a). That section, in turn, makes it a criminal offense to:

> knowingly and with intent to defraud, access[ ] a protected computer without authorization, or exceed[ ] authorized access, and by means of such conduct further[ ] the intended fraud and obtain[ ] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period[.]

18 U.S.C. § 1030(a)(4). Although Plaintiff asserts this claim against all Defendants, the Court finds no factual allegations supporting the claim that relate to the defendants in the FAC. Rather, the claim appears to be aimed at a data-theft scheme that allegedly was carried out by Plaintiff's

10

former employer, Rockhill, along with other defendants, in 2007 and 2008. *See* SAC ¶¶ 121-130. This claim is unrelated to the claims asserted against the defendants in the FAC and does not belong in this case. Therefore, the Court dismisses this claim without prejudice to reasserting it in a separate action and without leave to amend.

### 5. 42 U.S.C. § 12132 (Claim Twenty-Nine)

Plaintiff asserts a claim against all defendants under 42 U.S.C. § 12132, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The Court has reviewed the allegations in the SAC and does not find that any of the individual defendants sued in the FAC are alleged to have engaged in any particular wrongful conduct on behalf of a public entity based on Plaintiff's disability. In particular, neither the denial of access to the Department of Child Support Services on August 19, 2014 nor these defendants' efforts to collect child support payments are alleged to have been *motivated by* the Plaintiff's disabilities, even though there are allegations that they were *aware* of his disabilities. *See* SAC ¶¶ 317-319. While Plaintiff does include a general allegation that Contra Costa County and the Florida Department of Revenue (along with numerous other defendants) discriminated against him on the basis of his disability, *see* SAC ¶ 5, he does not include specific allegations in support of that allegation. Therefore, this claim fails as to the defendants named in the FAC. As to these defendants, the claim is dismissed with prejudice without leave to amend.

As to the defendants who were added in the SAC, there are numerous allegations that various individuals engaged in wrongful conduct in connection with Plaintiff's alleged disability but they are unrelated to the claims asserted against the defendants named in the FAC and therefore do not belong in this action.[4] *See, e.g.,* SAC ¶ 114 (alleging that Defendant Jamie Wilson "began conspiring with others to prey upon Plaintiff's anxiety disability"); ¶ 245 (alleging that Defendants Zeiph, Young, Murdock and Fannin "conspired to exploit Plaintiff's anxiety

---

[4] The Court does not reach the question of whether Plaintiff has sufficiently alleged these claims, whether they are timely, or whether they may be barred on the grounds of judicial immunity.

1  disability by, among other means, harassing and intimidating him whenever he attempted to access
2  [Contra Costa Superior Court's] public resources and services"); ¶ 251 (alleging that "[o]n January
3  21, 2014, Murdock and Wedemeyer, again acting on behalf of Murdock's co-conspirators, further
4  harassed Plaintiff and intentionally triggered panic attacks and other symptoms related to his
5  anxiety disability when he attempted to access the court and observe court proceedings"); ¶ 254
6  (alleging that "several co-conspirators acting on behalf of J. Wilson, possibly Hertz, Zeiph,
7  Murdock, Young, Fannin and possibly other co-conspirators, including Ortega, Wedemeyer,
8  Young, one of the Does 61-100 and Evans, harassed Plaintiff, retaliated against him and
9  intentionally triggered panic attacks and other symptoms related to his anxiety disability after he
10 reported the petty crimes perpetrated by Piscitelli, who they considered "one of [their] own," and
11 requested protection from Piscitelli"). Therefore, as to the defendants who were added in the
12 SAC, this claim is dismissed without prejudice to asserting it in a separate action and without
13 leave to amend.

### 6. Request for Declaratory Judgment (Claim Fifty-One)

Plaintiff asks the Court to enter a declaratory judgment, pursuant to 28 U.S.C. § 2201(a) that as of June 13, 2011, he no longer has an ongoing child support obligation toward G. As stated in the Court's January 8, 2015 Order, this claim is sufficiently pled to survive the Courts review under § 1915.

### D. State Law Claims

#### 1. Claims Against Kaiser and Rockhill (Claims Thirty-Two through Forty-Eight)

Plaintiff asserts numerous claims against two former employers, Kaiser and Rockhill, based on allegations that, *inter alia*, these employers discriminated against him on the basis of disability, subjected him to sexual harassment, failed to accommodate his disability and wrongfully terminated him. *See, e.g.,* SAC ¶¶ 128, 164-169. These claims are unrelated to the claims asserted against the defendants named in the FAC and do not belong in this case. Therefore, the Court dismisses these claims without prejudice to asserting them in a separate action and without leave to amend.

### 2. Tort Claims Asserted Against "All Defendants" (Claims Eight, Eighteen through Twenty-Eight)

Plaintiff has asserted the following tort claims against all Defendants: Negligence per se, Intentional and Negligent Infliction of Emotional Distress, Defamation Per Se, Defamation Per Quod, Intrusion into Private Affairs, Public Disclosure of Private Facts, False Light, Intentional and Negligent Misrepresentation, Conversion and Trespass to Chattels. As the Court explained in its previous order, to assert a tort claim against a public entity or its employees in California, a plaintiff must comply with the California Tort Claims Act. *See* January 8, 2015 Order at 16 (citing *Jackson v. California*, 2014 WL 670104, at *9 (E.D. Cal., Feb. 20, 2014) (citing Cal. Gov't Code § 950.6; *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (2004)). Similarly, to assert a tort claim against a public entity in Florida, a written claim must be filed with the appropriate agency. *See* Florida Statutes Annotated, Section 768.28. Plaintiff has included no allegations in the SAC indicating that the required written claims have been filed with the appropriate agencies. Therefore, these claims fail as to the individual defendants named in the FAC (all of whom are employed by public entities), all of the counties named as defendants in the SAC, including Contra Costa County, and all of additional defendants named in the SAC who are employed by public entities. As to these defendants, the claim is dismissed with prejudice and without leave to amend.

To the extent that these claims are asserted against new defendants who are not public entities or employees of public entities, the allegations in the SAC do not suggest that these claims arise out of the same transaction or occurrence as the claims that were asserted in the FAC. Rather, the factual allegations as to these new defendants relate to different transactions and occurrences. Because these claims do not belong in this case, they are dismissed without prejudice to reasserting them in a separate action and without leave to amend.

### 3. Tort Claims Asserted Against the Entity Defendants (Claims Eleven and Twelve)

Plaintiff asserts a claim for negligent hiring, supervision or retention against all entity defendants[5] and "top-level unidentified individual defendants," and a claim for negligence based

---

[5] Plaintiff identifies both private and public entities in the SAC. *See* SAC ¶¶ 14-19 (private

13

on failure to perform a mandatory duty against the public entities. To the extent these claims are asserted against public (rather than private) entities, they fail because under the California Tort Claims Act, "a public entity is not liable for an injury '[e]xcept as otherwise provided by statute.'" *de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 252 (2007) (citing Cal. Gov't Code § 815). In *de Villers*, the court found that there was no statutory basis for imposing direct liability on a public entity for negligent hiring, supervision or retention. Similarly, the Court finds here that there is no authority that would allow it to impose liability on the public entities named in this action on these grounds. Further, Plaintiff has not pointed to any other duty mandated by statute that would allow for the imposition of liability for negligent failure to perform a mandatory duty on any of the public entity defendants. Therefore, as to all public entities named as defendants, this claim is dismissed with prejudice without leave to amend. As to the private entities, the Court has reviewed the factual allegations in the SAC and finds that Plaintiff's negligence claims against these entities are based on different transactions and occurrences than are asserted against the defendants in the FAC and therefore do not belong in this case. Therefore, these claims are dismissed without prejudice to reasserting them in a separate action and without leave to amend.

### 4. Tort Claims Asserted Against Specified Defendants (Claims Nine, Ten, Thirteen, Fourteen, Fifteen and Seventeen)

Plaintiff asserts tort claims against physicians, nurses and security guards as well as certain specific defendants who were not named in the FAC (Watson, Smith, Briggette, Piscitelli, Brown, Murdock, Wedemeyer and Becerra). None of the individual defendants named in the FAC is alleged to be a physician, nurse or security guard. Further, the Court has reviewed the factual allegations in the SAC and finds that the tort claims Plaintiff asserts against the defendants named in these claims are based on different transactions and occurrences than are asserted against the defendants in the FAC and therefore do not belong in this case. These claims are dismissed without prejudice to reasserting them in a separate action and without leave to amend.

### 5. The Bane Act, Cal. Civ. Code Section 52.1 (Claim Sixteen), the Ralph Act, Cal. Civ. Code Section 51.7 (Claim Thirty), and the Unruh Civil Rights Act, Cal. Civ. Code Section 51 (Claim Thirty-One

---

entities), ¶¶ 33-40 (public entities).

Plaintiff asserts a claim under the Bane Act, Cal. Gov't Code Section 52.1, against "[i]ndividual [d]efendants [w]ho [t]hreatened and/or [c]omitted [v]iolent [a]cts [a]gainst Plaintiff and the [e]ntity [d]efendants that [e]mploy [t]hem." He also asserts claims under the Ralph Act, Cal. Civ. Code Section 51.7 and the Unruh Civil Rights Act, Cal. Civ. Code Section 51, against all Defendants.

The Bane Act allows an individual to bring a civil action for damages where "a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Gov't Code § 52.1. The Ralph Act guarantees the right of "[a]ll persons within the jurisdiction of this state . . . to be free from any violence, or intimidation by threat of violence, committed against their persons or property" based on their membership in a protected class or their disability. Cal. Gov't Code § 51.7. The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

To assert any of these claims against a public entity, Plaintiff must satisfy the claims requirements of the California Tort Claims Act. *See Davis v. Kissinger*, Case No. C-04-0878, 2014 WL 5486525, at * 2-3 (E.D. Cal., Oct. 29, 2014) (Bane Act and Ralph Act); *Esteem v. City of Pasadena*, Case No. C-04-0662, 2006 WL 4941835, at *3-4 (C.D. Cal., Feb. 16, 2006) (Unruh Act). As discussed above, Plaintiff has not alleged compliance with the California Tort Claims Act, even though the Court raised this issue in its January 8 Order as to some of the claims in the FAC. Nor has he satisfied the analogous requirement under Florida law. Consequently, these claims fail to the extent they are asserted directly against public entities (including Contra Costa County) and are dismissed without prejudice and without leave to amend.

With respect to private entities named in the SAC, as well as any individuals employed by

these private entities, the Court has reviewed the allegations of the FAC and finds that the alleged conduct that might constitute a violation of any of these statutes is unrelated to the claims asserted against the defendants named in the FAC and therefore, that these claims must be brought in a separate action. Therefore, they are dismissed without prejudice and without leave to amend. As to individuals employed by public entities, the same is true, with the following exception: in the SAC, as in the FAC, Plaintiff alleges that Defendant Cardenas blocked his access to the Department of Child Support Services on August 19, 2014 and that Defendant Dippel ratified that act. SAC ¶ 309. As discussed above, the Court has already found that Plaintiff's claim under 42 U.S.C. § 1983 is sufficiently pled to survive its § 1915 review as to alleged First and Fourth Amendment violations based on the conduct alleged to have occurred on August 19, 2014. Further, these allegations are sufficient to support claims under the Bane Act, at least at this very preliminary stage of review. (As there is no allegation that Cardenas or Dippel's conduct was motivated by Plaintiff's disability or membership in any other protected class, Plaintiff has not stated claims against these defendants under the Ralph Act or the Unruh Act). Therefore, to the extent that Plaintiff now seeks to add a Bane Act claim against Cardenas and Dippel based on the same conduct, he may do so. As to all other individual defendants, this claim is dismissed without prejudice to reasserting it in a separate action and without leave to amend.

### 6. Civil Conspiracy (Claim Forty-Nine)

In the Court's January 8, 2015 Order, it explained that "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." January 8, 2015 Order at 20 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994)). It further found that even assuming conspiracy could be asserted as a stand-alone claim, "there must be some factual content pled to support the conspiracy claim." *Id.* (citing *Yagman v. Galipo*, 2013 WL 141785, at *13 (C.D.Cal., Jan. 7, 2013)). In his SAC, Plaintiff has included extensive allegations relating to an alleged conspiracy. As discussed above, however, in connection with Plaintiff's RICO claim, Plaintiff's conspiracy allegations are an attack on one or more state court decisions. Therefore, the Court concludes that this claim is

1 barred under the *Rooker-Feldman* doctrine. Plaintiff's civil conspiracy claim is dismissed with
2 prejudice and without leave to amend.

### IV. CONCLUSION

Plaintiff's claims under 42 U.S.C. § 1983 based on alleged violations of his First Amendment and Due Process rights by Defendants Dippel, Self, Linnell and Cardenas, and under *Monell*, against Contra Costa County, are sufficiently alleged to survive the Court's review under 28 U.S.C. § 1915. In addition, Plaintiff may proceed with his Bane Act claim against Defendants Cardenas and Dippel, as well as his request for a declaratory judgment under 28 U.S.C. § 2201(a). The remaining claims and defendants are dismissed from this action. **The United States Marshal for the Northern District of California is directed to serve, without prepayment of fees, a copy of the First Amended Complaint, the Second Amended Complaint, the Court's January 8, 2015 Order, any scheduling orders, and this Order upon Defendants Dippel, Self, Linnell, Cardenas and Contra Costa County.**

**IT IS SO ORDERED.**

Dated: June 9, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge